IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOHN PESINA,                          §
(TDCJ-CID #1390374)                   §
                    Plaintiff,        §
                                      §
vs.                                   §        CIVIL ACTION H-09-2316
                                      §
JUSTIN L. COOPER, *et al.*,           §
                                      §
                    Defendants.       §

## MEMORANDUM AND OPINION

John Pesina, a Texas Department of Criminal Justice inmate, sued in July 2008, alleging civil rights violations resulting from a failure to protect his safety and excessive force. Pesina, proceeding *pro se* and *in forma pauperis*, sues Justin L. Cooper, Correctional Officer II at the Ferguson Unit; and Rocky Moore, Assistant Warden at the Ferguson Unit.

The threshold issue is whether Pesina's claims should be dismissed as frivolous. The court concludes that Pesina's claims lack merit and should be dismissed for the reasons stated below.

I.      **Plaintiff's Allegations**

On May 26, 2009, at 11:20 a.m., Officer Varela placed Pesina in the administrative segregation shower, which was located on the first floor of the N-block of the Ferguson Unit. At that time, Officer Varela, the officer on duty, stated that he was leaving the block, and Officer Cooper came to relieve him of his duties. While Pesina showered, Officer Cooper searched Pesina's cell. Pesina explains that it is a common practice for officers to place inmates in the shower or in the day room while they conduct cell searches.

When Pesina was finished showering at 11:25 a.m., he called to Officer Cooper to let him

out of the shower. Pesina states that Officer Cooper exited Pesina's cell, spoke to the picket officer, returned to Pesina's cell, and then attended to a different inmate who was in a shower on the third floor. Pesina states that the shower was a very small enclosed space, with no ventilation, and extremely hot. Officer Cooper went to search Pesina's cell for a third time and refused to escort Pesina from the shower back to his cell.

Frustrated, Pesina called to a ranking officer. At approximately 11:35 a.m., Officer Cooper came to the shower and placed handcuffs on Pesina. Pesina complains that the handcuffs were so tight that he suffered numbness, disfiguration, loss of blood circulation for five to eight minutes, soreness in the wrists, and red welts on both wrists. When Pesina told Officer Cooper about the pain, Officer Cooper replied, "O shut up sissy a-- b----, crying like a big old brat." As Pesina was being escorted to his cell, Sergeant Hunt approached, listened to Pesina's complaints, removed the handcuffs, and asked that photographs be taken of Pesina's wrists. Officer Cooper told Sergeant Hunt that he had lost his temper.

Nurse Galloway examined both of Pesina's hands, pricked the tips of his fingers with a needle, and determined that he had not sustained permanent injury. She gave him Ibuprofen and Tylenol, and she told Pesina to massage the areas on the wrists.

On June 27, 2009, Pesina asked Warden Moore for assistance in prosecuting Officer Cooper. Warden Moore refused to help Pesina file a life-in-danger complaint.

Pesina seeks unspecified monetary relief.

## II.     Standard of Review

"An [ *in forma pauperis* ] complaint may be dismissed as frivolous pursuant to 28 U .S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States,* 160 F.3d 273,

274-75 (5th Cir. 1998).  A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001)(citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)).

The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990).  A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault,* 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. *Haines v. Kerner,* 404 U.S. 519 (1972).  However, the plaintiff's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986).

Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott,* 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).

## III.    The Claim Based on a Failure to Protect

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). A prisoner must satisfy a two-part test, consisting of an objective and a subjective component, to state a claim that the conditions of his confinement violated the Eighth Amendment. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). First, a prisoner must demonstrate the objective component of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). "Second, under a subjective standard, the prisoner must establish that the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Id.* at 720. A prison official acts with deliberate indifference "only if he knows that an inmate faces a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

"To prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). The deliberate indifference standard in a failure to protect claim is subjective, not objective. It requires proof that the official actually knew of a substantial risk of serious harm and failed to act. *Farmer*, 511 U.S. at 832-34.

Prison officials must be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order. *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990)(citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). A court may not second-guess prison officials' good faith assessment of the facts before them or the adequacy of their efforts to maintain prison discipline and security.

Pesina alleges that the defendants failed to protect his personal safety because Officer Cooper knew that it was hot in the shower but failed to escort Pesina to his cell immediately after Pesina finished showering. Pesina's pleadings show that Pesina entered the shower at 11:20 a.m. on May 26, 2009, and he finished his shower at 11:25 a.m. When he called to the officer on duty, Officer Varela, that officer said he was leaving. Pesina states that Officer Cooper had just come to the area to relieve Officer Varela. Pesina also states that while Pesina was in the shower, Officer Cooper was searching Pesina's cell. After an initial search, Officer Cooper consulted with the picket officer and returned to Pesina's cell. Pesina also states that Officer Cooper escorted another inmate out of the shower on the third floor. In response to this court's interrogatory, Pesina states he was escorted out of the shower at 11:35. Of the fifteen minutes he was in the shower, he was showering for five minutes and waiting for ten minutes.

Pesina has not alleged that the defendants knew of, and disregarded, a substantial risk to Pesina's health and safety. The facts Pesina alleges do not demonstrate that he faced an obvious risk to his personal safety. Pesina has not alleged that the defendants deliberately failed to protect Pesina's personal safety, in violation of the Eighth Amendment. Pesina's claim is dismissed as frivolous.

## IV.    The Claim Based on the Use of Excessive Force

Pesina complains that Officer Cooper used excessive force when he applied the handcuffs too tightly.

"[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In the context of an allegation of

the use of excessive force by a prison official, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. "In determining whether the use of force [by a prison guard] was wanton and unnecessary," the court considers "the extent of [the] injury suffered," "the need for [the] application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321 (internal quotation marks omitted)).

The Supreme Court has recognized that the Eighth Amendment includes an "objective component": in considering a prisoner's claim, the court must ask "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component of the Eighth Amendment is "contextual," *id.*; whereas a conditions-of-confinement claim requires "extreme deprivations" to be cognizable, in the excessive-force context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." *Id.* at 9.

"That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* . "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley*, 475 U.S. at 327).

To support an excessive force claim, a prisoner "must have suffered from the excessive force a more than de minimis physical injury, but there is no categorical requirement that the physical

injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). "In determining whether an injury caused by excessive force is more than de minimis, this court looks to the context in which that force was deployed." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.* at 703-04 (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).

To state a claim for excessive force in violation of the Constitution, a plaintiff must allege: (1) an injury; which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000); *Ikerd v. Blair,* 101 F.3d 430, 433 (5th Cir. 1996).

In the instant case, Pesina complains that Officer Cooper applied handcuffs too tightly. The Fifth Circuit has recognized that the use of restraints for punitive purposes is violative of the Constitution. *See Fulford v. King*, 692 F.2d 11, 14-15 (5th Cir. 1982) (holding that the eighth amendment's prohibition against cruel and unusual punishment is implicated when handcuffs or restraints are used to subject a prisoner to "great pain" either "deliberately, as punishment, or mindlessly, with indifference to the prisoner's humanity").

It is well-established in the Fifth Circuit, however, that an officer's act of "handcuffing too tightly, without more, does not amount to [a claim of] excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Nor does the development of "'acute contusions of the wrist' and [a] psychological injury from being handcuffed" give rise to a claim of excessive force. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). *See also Freeman v. Gore*, 483 F.3d 404, 416-17 (5th

Cir. 2007)(finding plaintiff's allegations that deputies twisted her arms behind her back while handcuffing her, "jerked her all over the carport" and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms, to allege only de minimis harm). In fact, the Fifth Circuit has reasoned that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest [are insufficient to] give rise to a constitutional claim for excessive force." *Freeman*, 483 F.3d at 416 (citing *Glenn*, 242 F.3d at 314 (5th Cir. 2001) (swollen wrist and bruising of the wrists and arms held to constitute only de minimis harm)).

Though the claims in *Freeman, Tarver,* and *Glenn* were based on the Fourth Amendment, the analyses in those cases are relevant here because a claim of excessive force by a law enforcement officer is analyzed under the same standard regardless of whether it arises under the Fourth Amendment or the Eighth Amendment. *See Ikerd*, 101 F.3d at 434 n.9 ("[A]ny force exerted by a law enforcement officer that would be objectively reasonable under [the Fourth Amendment] would also be de minimis under *Hudson*. Similarly, any force that would be objectively unreasonable under [the Fourth Amendment] would not fall within the de minimis language in *Hudson*.").

In *Dominguez v. Moore*, 149 Fed. Appx. 281, 2005 WL 2404744 (5th Cir. 2005), the Fifth Circuit found, in an unpublished opinion, that Dominguez had alleged an injury that was more than de minimis as required to survive dismissal of his excessive force complaint as frivolous. *Id.* Dominguez's complaint alleged that, because of the refusal to loosen his handcuffs, his hands became "grossly swollen" and "painful," with deep cuts appearing "around both wrists where the handcuffs were embedded into his flesh." He further alleged that he has permanent scarring and "now suffers from nerve injury . . . caused by the long-term wearing of over-tight handcuffs and the black box." The Fifth Circuit found that the district court erred in holding that Dominguez must

show that he suffered a significant injury in order to proceed on his IFP complaint.

In the instant case, Pesina states that he placed his hands behind his back and through the food slot in the door. Officer Cooper applied handcuffs and escorted him to his cell. Pesina states that he complained that the handcuffs were too tight, but Officer Cooper ignored him. When Pesina saw Sergeant Hunt approaching, Pesina again complained that the handcuffs were too tight. Sergeant Hunt removed the handcuffs. Pesina states he was in the handcuffs for five to eight minutes. (Docket Entry No. 9, Plaintiff's More Definite Statement, p. 8). Pesina complains that the handcuffs were so tight that he suffered numbness, disfiguration, loss of blood circulation for five to eight minutes, soreness in the wrists, and red welts on both wrists. Unlike the injuries described in *Dominguez*, Pesina sustained minor bruising and soreness. The force alleged is *de minimis* and insufficient to satisfy the legal standard necessary for recovery.

The Fifth Circuit has also recognized the possibility under *Hudson* that even a de minimis physical injury may be sufficient for Eighth Amendment purposes if the force used is "of a sort repugnant to the conscience of mankind." *See Gomez*, 163 F.3d at 924 n.4. This court concludes that the use of force here was de minimis, and the brief use of tight handcuffs while transporting an inmate to his cell is not force "of a sort repugnant to the conscience of mankind."

Determination of excessive force includes consideration of the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). Officer Cooper was responsible for escorting Pesina from the administrative segregation shower to Pesina's cell. The use of handcuffs was necessary to preserve institutional security. Sergeant Hunt took steps to temper the

severity of a forceful response when she allegedly removed Pesina's handcuffs. From the pleadings, it does not appear that Officer Cooper used restraints for punitive purposes. Instead, it appears that Officer Cooper used the handcuffs to secure Pesina so he could be transported from the administrative segregation shower back to Pesina's cell.

Pesina's excessive force claim lacks merit and is DISMISSED as frivolous.

## V.    Claims Based on Respondeat Superior

Pesina sues Rocky Moore, Assistant Warden at the Ferguson Unit. Pesina claims that he complained to Assistant Warden Moore about Officer Cooper's failure to remove Pesina from the shower. (Docket Entry No. 1, Complaint, p. 6). Pesina states that he wished to file criminal charges against Officer Cooper, and he needed Assistant Warden Moore's help. Pesina has not alleged that this supervisory defendant was personally involved in any of the constitutional violations Pesina alleges. Pesina seeks to impose liability on this defendant solely on the basis of his position as an ultimate supervisor.

Individual liability under section 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of employees. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials may be liable if their own action or inaction, performed with a certain degree of gross negligence or deliberate indifference, proximately causes a constitutional violation. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 459 (5th Cir. 2001). Pesina alleges that this supervisory defendant is liable for actions of his subordinates; such allegations fail to state a claim under section 1983. Pesina's claims that the individual employees at the TDCJ-CID are acting under the direction of the supervisory defendant are, as a matter of law, insufficient. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691-95 (1978); *Alton v. Texas A &*

M Univ., 168 F.3d 196, 200 (5th Cir. 1999); *Southard v. Texas Bd. of Criminal Justice,* 114 F.3d

539, 551 (5th Cir. 1997); *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). The misconduct

of the subordinate must be affirmatively linked to the action or inaction of the supervisor. *Southard,*

114 F.3d at 551. Pesina's claim that prison officials were acting under the direction of the

supervisory defendant does not affirmatively link the misconduct of the named prison employees to

the actions of the supervisory defendant.

To prevail against a supervisory official, the plaintiff must demonstrate that the official's act,

or failure to act, either caused or was the moving force behind the plaintiff's harm. *See Monell,* 436

U.S. at 692-94; *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998). The supervisor's conduct

must be measured against the standard of deliberate indifference. *Alton,* 168 F.3d at 200. "For an

official to act with deliberate indifference, 'the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference.'" *Brenoettsy,* 158 F.3d at 911. "The standard of deliberate indifference is high." *Id.*

(citing *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 218 (5th Cir. 1998)). Pesina does not allege

that this supervisory defendant was aware of and disregarded a substantial risk to Pesina's safety.

Pesina does not set out specific facts showing that this defendant was personally involved in the

violations of Pesina's civil rights. The claims against Assistant Warden Moore are dismissed.

**VI.    Conclusion**

The action filed by John Pesina (TDCJ-CID Inmate #1390374) lacks an arguable basis in law.

His claims are DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i). Any remaining

pending motions are DENIED as moot.

The TDCJ-CID will continue to deduct twenty percent of each deposit made to Pesina's

inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1)     the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2)     the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)     the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-Strikes List.

SIGNED at Houston, Texas, on _Feb 4_____, 2010.


_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE